In 5037, Banham, Inc. vs. U.S. Give everybody a chance to settle. May it please the court. The court should grant Banham's appeal here based upon three issues. First, the BOP abused its discretion in keeping Alston-Wilks within the competitive range when it failed to timely establish its proof of zoning. Now, the solicitation clause here did make this initially a matter of discretion to the contracting officer. However, Banham believes here that there was an abuse of that discretion based upon disparate treatment. In an eerily similar situation that happened right around this same time in a procurement regarding another facility, the BOP eliminated Banham from the competitive range for a virtually identical failure to timely submit proof of zoning, despite the fact that the BOP even had that proof of zoning in its hands. How are we supposed to consider what they did in another case as interfering with it? The question, I think, why is the question not did they have the discretion here to make a decision with respect to zoning or not zoning and what was required? And if they've got the ability, they've got the discretion inherent in the statute of the regulations to do that, then what relevance is it that they did it in what they did in another case? I mean, maybe what they did in the other case was subject to challenge. How do we know? But we can only look, I think, at the facts in this case, right? Well, Your Honor, what Banham has attempted to establish is disparate treatment. And that other procurement has already been litigated and has already been before this court. And essentially what Banham is attempting to show is that we had two very similar situations in which offerors failed to timely submit zoning documentation. And in both situations, the BOP took two completely opposite results, both of which… took place in this case. I apologize. Can you repeat that, Your Honor? Well, when you were saying that because a failure to comply in a certain way led to a discretionary exclusion, that this case should be decided the same way, but they weren't completely identical. And appreciating the value of precedent for all contractors, why was there an abuse of discretion in this case? Your Honor, we believe that it was a very virtually identical solicitation. I believe the clause referenced was exactly the same or substantially the same. And in both cases, where an offeror failed to timely submit zoning documentation, in the previous case that was already decided, the court found that Banham was properly eliminated from the competitive range. And then here… I do have any case, any precedent in which we've taken when there's discretion to be had on the facts before us where we've used other cases with different parties under a different contract to say there's an abuse of discretion because they exercised their discretion in one way in this other case and in this way here. I mean, I don't know. I can't recall seeing a case in which we've done that. And I think it would be particularly hard because what if we scoured the earth and figured out that there were 14 cases and in half of them they exercised their discretion to allow it and in the other half didn't. Does that establish that they have abused their discretion in every one of those cases? Well, Your Honor, I don't believe so because here we're talking about one agency's actions with respect to one specific offeror Well, can we move on then to… I assume you have other arguments about the use of discretion. Yes, Your Honor. The second issue is when the BOP sought… is that it's Banham's position that Alston Wilkes made a material misrepresentation to the BOP during the procurement process. When the BOP sought clarification regarding Alston's special use permit that it ultimately did finally receive well after the deadline, Alston made material misrepresentations to the BOP. This clarification was needed because in Alston Wilkes' zoning application submitted to the city, it indicated to the city council that it would only be accepting non-violent offenders. Yeah, but then it went back and working with the contracting officer, it went back and it got the guy who had made the initial okay to say, all right, now you've given me full information and we're still okay to go. Why is that not sufficient? Well, your explanation is exactly where the problem lies because the… Alston Wilkes did not go back to the city council who was responsible for granting the special use permit. Instead, they went to a zoning official who was not part of the city council and not part of the party who was responsible for awarding the special use permit. Did Alston Wilkes submit the email exchange between itself and Craig Monroe, the zoning official, to the BOP contracting officer? I believe it was Craig Harmon. Craig Harmon, yeah. But yes, I believe they, if I recall correctly, I believe they did. So the BOP contracting officer had an opportunity to see what the evidence was that Alston Wilkes had to substantiate that it had gotten the clearance from the city that its permit would still be intact. Well, Your Honor, I don't believe that Alston Wilkes revealed to the BOP contracting officer that Mr. Harmon was not the individual or even part of the city council who had the authority to even issue the special use permit. How do we, I mean, isn't he the guy that signed the initial letter, who originally signed it and said that they can grant him the special use permit? Yes, Your Honor, however, that was... So, I mean, if we're relying on that letter in the first instance and he's the guy that signed it, why wouldn't his then saying, okay, I'm effectively amending this letter and I'm going to let you, I'm going to say it's okay for you to do what you're doing? Well, Your Honor, it was simply based, Mr. Harmon was able to sign that special use permit based upon the vote of the city council. And quite simply, we believe that Bantam's under the impression, Bantam believes that that special use permit, the vote approving that by the city council was obtained through false pretenses essentially based on the representations that they were not going to be housing violent offenders. I guess if the BOP CEO was unsatisfied with Craig Monroe's email, the CEO could have asked for further follow-up from Alston Wilkes, right? Perhaps, but at the end of the day, it was the city council who was to vote on that. And we believe that, once again, the city council did not have all the information. I mean, is it in the record what the rules are for getting these special permits? Is there any delegation done to Mr. Harmon so that maybe he was delegated that authority? I mean, it's not some random guy. It's the guy that signed on behalf of the city council in the first instance, allowing them to do that, who is now coming back and said, you can do the second thing. I don't think it's beyond the pale to assume and to accept that this is the guy who has the authority to make these determinations on behalf of the council. Well, Your Honor, part of the record does contain the city ordinance explaining the process for obtaining a special use permit, and it does specifically say that the city council is to vote on that. So who are you alleging, I mean, I don't want to use the word fraud, that's too strong, but you're alleging some sort of bad act here, right? Correct, Your Honor. Who are you accusing of having committed the bad act? Alston Wilkes, towards the BOP, when it held out Mr. Harmon as having authority that essentially is holding out that authority that he did not have because he did not have… Well, he held himself out as having that authority. So you're saying that Alston Wilkes should have gone beyond what the official, in this official capacity, was telling him the nature of his authority was? Your Honor, I believe the special use permit, or sorry to correct myself, I believe the documentation from the BOP requested that Alston Wilkes provide documentation indicating that the city council was aware of the requirements when it voted, and that it needed its vote and determination, which did not happen. So is the theory that the government abused its discretion by accepting this letter as signifying that the city council had approved it, is that the theory? Well, that plus the fact that we don't, Bantam believes that Alston Wilkes made a material misrepresentation by providing that documentation from Mr. Harmon and not from somebody on the city council. Well, to try and understand what the issues really are and pursuing this line of inquiry, are you alleging that there was some sort of incompetence or bad action on the part of the city council or that there was some sort of favoritism or casual decision or whatever one might look for on the part of a contracting officer? Not on the city council, Your Honor, and also not on the part of the contracting officer because I don't believe the contracting officer would have necessarily known that Mr. Harmon was not on the city council and did not have, was not one of the persons who were voting on that special use permit. But then doesn't that take us back to the initial issue of how much discretion there is in some of these more complex issues that arise, zoning on the one hand, choice of contractor on another hand? I don't believe so, Your Honor, because the contracting officer had made that request for clarification from Alston Wilkes and Alston Wilkes did not provide that, did not provide proper clarification. Instead of providing clarification from the city council, they got it from... But eventually, it was provided, was it not? Not from anyone within the city council, Your Honor. Your time is running out. Can you quickly talk about the expiration of the permit? That was a little confusing. Can you just quickly sum up what the argument is? That's a fairly basic issue, Your Honor. Essentially, the zoning statute stated that if you don't either get a building permit or if you discontinue the development and don't continue it within a year, it expires on its own accord. And we believe that that simply didn't, while Alston Wilkes did obtain a zoning permit, a special use permit, well over a year had passed and no, they didn't get any extension. They didn't get any, they didn't ask for any extension. They didn't, obviously didn't continue development at that point because no contract had been awarded. And as such, we believe that it expired and what the contract or the solicitation required that proof of zoning be maintained throughout the life of the contract. And the BOP and Alston Wilkes seem to be making an argument that it's okay to have almost like a green light, red light, green light, red light type of situation with their zoning wanting to somehow be allowed to allow an offer to fall in and out of zoning throughout the course of the solicitation so long as it does not come up. So long as they have it at the time the contract comes in and we simply don't believe that that's the intent of that solicitation clause. Thank you. Thank you. There are no cases addressing that or finding disparate treatment and that's probably for two reasons. First is because as the court noted, that's the nature of discretion. One contracting officer in one case can decide to exclude an offer while another one in another case can decide to include them. Moreover, when you try to do cross-procurement comparisons, it's difficult if not impossible to show that the offer is similarly situated. For example, here, there's no evidence that in that other procurement in Columbia, South Carolina, that BANNM adequately kept the agency updated on its progress in obtaining the special use or its permitting. Moreover, that case involved an entirely different jurisdiction. I understand your point. Hypothetically, if we had two circumstances that we could assure ourselves were identical and you had one contracting officer doing one thing in the case and the exact opposite in another one, would that be a basis for arguing bad faith or something of that sort? I think when you're dealing with zoning requirements, it's difficult to imagine such a hypothetical because you have different jurisdictions with different zoning requirements. So the contracting officers very well may have very different views about the likelihood that both offers will be able to ultimately obtain adequate zoning. If somehow you could show that the contracting officer viewed both offers as having the same likelihood of obtaining adequate permitting, then possibly yes, but I don't see how you could show that. Indeed here, the contracting officer reasonably determined in that case that BANNM was unlikely to obtain adequate zoning because the zoning it ultimately obtained limited the types of offenders. There's something odd about this case, isn't there? Isn't it a little striking that granted we accept that there's a lot of discretion left here based on the circumstances, but it seemed there were a lot of glitches here and a lot of exceptions to what the norm is and a lot of loosening of the standards that apply. Now, it may be that the statute permits discretion and the authority to go beyond that. There seems to be a lot of that going on here, right? The contracting officer ultimately took corrective action and kept BANNM within the competitive range. So she did the same thing there ultimately as she did here. BANNM had a chance to compete notwithstanding its late zoning didn't disqualify it. And the court of federal claims found that that was reasonable and this court affirmed that. So actually she ultimately, the contracting officers, did the same things in both cases. So I don't think that this was unusual at all. What about Mr. Harmon? Turning to the misrepresentation case, there's no evidence before this court that Mr. Harmon wasn't the appropriate official to respond to inquiries about the scope and basis of the special use permit. But is it not correct that it's the city council that has the only body that has the authority to make or not make these decisions, not a particular individual? No, that's incorrect. The city council has the authority to issue the special use permit. Once the special use permit is issued, Mr. Harmon could respond to questions about that and it was the city manager under Fayetteville Zoning Ordinance Section 30-8F1B that had the authority to revoke the special use permit due to a misrepresentation. Moreover, the city manager had the authority to delegate that power and it appears that he delegated that to Mr. Harmon, who was in the planning department, which was under his authority, given the fact that Mr. Harmon had presented the special use permit on behalf of the city manager and he had signed the special use permit on behalf of the city manager. So it doesn't follow from the fact that the city manager or the city council voted to approve the special use permit that they had the power to revoke it. Why did it take so long for the award to be decided on? Your Honor, there were numerous rounds of discussion and a lot of that delay actually was due to the fact that Bantam repeatedly refused to accept that it had to accept all types of offenders. The agency had to go through five rounds of discussion because Bantam kept saying that it didn't have to accept all types of offenders, which ironically is not what it's accusing AWS for failing to do. So what about the expiration of the permit? The permit expired during the pendency of the bid process and the point of extending, extending, extending the deadline to get the permit was because BOP obviously needed assurances that the awardee would have a proper zoning permit. That's incorrect. The permit did not expire during the evaluation process. The city has never indicated that it expired and in fact AWS has been performing for almost a year without any zoning problems. All we have is Bantam's speculative reading of the zoning ordinance, which is incorrect. If you read that ordinance 30-2C7DA, all it does is establish a deadline for obtaining a building permit for development authorized by a special use permit. That does not apply here because the development authorized by AWS's special use permit didn't require a building permit. The only development that was authorized by... They did get a building permit though, didn't they? There's no evidence of that, no, Your Honor. They got a special use permit. They got a special use permit in 2012 and then didn't they get a building permit in November of 2013? I don't believe there's any evidence of a building permit, Your Honor. And if there was, that one wasn't authorized by the special use permit. All the special use permit says is AWS, you can make a different use of an existing facility. It doesn't say you can build a new facility. So to make a different use of an existing facility, that doesn't authorize development that requires a building permit because you don't need a building permit to make a different use of an existing building. Moreover, in their reply, Vandem now cites the second portion of that regulation, putting aside the issue that they waived that by not raising it below or in their opening brief. None of the predicates for that section are met here. There's no evidence in the record here that AWS ever started using the facility as a halfway house before war. That if it did, that it ever ceased using that. And if it did cease that use, that it ever discontinued that, that it didn't restart it within a year. So at this late date, they can't point to anything in the record supporting that. And it should be noted that even in the context of maintaining proof of zoning during the life of the contract, the solicitation and the contract give the contracting officer discretion to excuse any such failure to maintain proof of zoning. So what we ultimately have here, Your Honor, is that the contracting officer was reasonably attempting to maintain competition to obtain the best value for the government by conducting discussions with both AWS and with Vandem to address the deficiencies in their proposals because she wanted to maintain competition. And under this Court's Burch and Davis case, that's appropriate. If Your Honors have no further questions, I respectfully request that this Court firm the decision to record federal claims. Thank you. May it please the Court for the intervener. Judge Gross, let me respond to a question that you asked earlier. I think, I guess I can say Judge Horne stole a comment I made during an argument below about there being a strange dance and you sort of picked up on that. I think the difference is there was no irregularity. There's no question here that the contracting officer had the authority, the discretion not to eliminate even if there was a late proof of zoning submission. There's no question that the contracting officer had the authority and had the discretion to issue an extension of the time. And there's no question that the contracting officer had the authority and the discretion to take it up as a part of discussion. They could have done any of those things. What was strange is that they issued an extension but then said, but we're still not going to consider it. We're going to take it up in discussion. It was a strange dance. I agree. But none of it was irregular. None of it exceeded either the authority or the discretion that inherently existed. And in fact, at the end of the day, what you all are deciding is, did Judge Horne make any conclusions of law that are wrong as a matter of law? And did she find any facts that simply were clearly erroneous? And she didn't either. A comment was made, and I don't want to jump around, but I want to address a few of the things that you all raised. This question about a misrepresentation. We're all familiar with the basic concept. There has to be a reliance, a reasonable reliance. BOP didn't get a misrepresentation, and they didn't rely on any misrepresentation. What they're really trying to argue is that there was originally, in the original application, a misrepresentation to the city council. Well, that was a process which was open to the public. If Bannum believed there was something wrong at that level, they had the opportunity and the ability to have participated in that and addressed it. Well, it doesn't go that far. They're saying there are rules. There are strict rules. People who deal with the government and who have deadlines are entitled to rely on them, to expect their competitors to rely on them. And here, it just went too far in a discretionary direction. And that that's not an appropriate way. It's hard enough to deal with the government, but it's even harder if that which you're told applies rigidly, as this court says over and over, to be told not in this case. I think the problem, Judge, is that they don't in any way establish how it went too far. In fact, the record here reveals that Halston Wilkes kept the BOP informed of the status of the application for the special permit, that there was an extension of the voting meeting on that, and as soon as it happened, they notified and delivered it to the agency, all of which was not very long outside the deadline. But it was outside. It's really their complaint, and perhaps if there is an issue for this court, it is how rigorously and rigidly aspects which do have a discretionary flavor to them nonetheless need to be reviewed. And I think they do need to be reviewed, Your Honor, but this court has admonished many times that, especially in a situation like this where we have a negotiated procurement with a best value component, that there's not to be a substitution of judgment, a substitution of discretion. There's clearly nothing here that is arbitrary or capricious with respect to the discretion that was exercised, with the opportunity that was given, the brief extensions that were allowed. There simply isn't, and it would require truly a mere substitution of judgment, which this court has admonished many times is not supposed to happen at this level or below. And so one last thing, just very quickly, because it was said specifically, is there was a suggestion that what was critical about this submission by Austin Wilkes in response to the discussion notice about notifying Fayetteville City Council about the actual requirements of the solicitation. And it was said again, as it was missaid in the briefs, that specifically BOP asked that it be communicated to the City Council and that they were expecting and requiring a response from City Council. And we addressed on page 17 of our brief, in footnote two, the exact language from the record. And in fact, there was no such requirement or request. What was requested was that Austin Wilkes provide documentation of communication to the appropriate officials slash proper authority, evidencing that they have been notified to the requirements as stated in the statement of work, et cetera. And in fact, that is what was done. You are simply being asked, again, with no proof, with no demonstration of the burden having been met, to speculate or conjecture that Mr. Harmon is the wrong person, when in fact, Mr. Harmon, the record reveals, is the man who made the initial recommendation, who presented it, who issued the letter. Mr. Sweet has established that it's very clear from the ordinance that there is a delegation of authority down to the city manager and in fact through to the planning and zoning department. So you truly would be asked to find that there was any abuse of discretion here or that there was any error in the determination of the facts by the lower court. You would be asked to just speculate wildly on three critical matters, which I don't think would be fair or appropriate. Thank you. Will we still have two minutes of rebuttal? Just to make a clarification of a point that both councils made previously, they both indicated that Also Wilkes kept the BOP informed. This simply isn't the case. The record shows that Also Wilkes did not even contact the BOP to even tell them what's going on until after that 60-day period had already expired, three days after the fact was the first communication from Also Wilkes. That doesn't seem to get you very far. We're an appellate court. We're not even a trial court. Even in the trial court, we're going to get into what exactly happened, what day, who communicated with what. I think it's a stretch for us to use that and take it anywhere in terms of an appeal process, right? Sure, Your Honor. I just wanted to clarify a point that they had made. Again, no communication was made before the expiration of that deadline. Another point I wanted to rebut that Mr. Sweet made was that Bantam did raise the continued development issue in its original brief at page 19 and 20, I believe it was. We did cite two cases regarding disparate treatment on page two of our reply, Clinic Corp and PGBA. Another point that Mr. Warner, I believe, made was that the BOP discussion notice indicated that they wanted indication from the proper officials and proper authority that they were aware. Again, that's not Mr. Harmon. That's the city council who had the authority, who were the party to vote on that special use permit. Thank you. We thank all counsel and the jury for submitting.